# Exhibit A

ELECTRONICALLY FILED - 2023 Sep 27 9:43 AM - SPARTANBURG - COMMON PLEAS - CASE#2023CP4203637

STATE OF SOUTH CAROLINA

COUNTY OF SPARTANBURG

Omega Honeywood,

                Plaintiff,

    vs.

Spartanburg Community College,

              Defendant.

IN THE COURT OF COMMON PLEAS
SEVENTH JUDICIAL CIRCUIT

**SUMMONS**
**(Jury Trial Demanded)**

TO THE DEFENDANTS ABOVE NAMED:

    YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is served upon you, and to serve a copy of your answer to this Complaint upon the subscriber at the address shown below within thirty (30) days (thirty five (35) days if served by United States Mail) after service hereof, exclusive of the date of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

                      **CROMER BABB PORTER & HICKS, LLC**

                      BY:    s/ Chance Sturup
                              Chance Sturup (#105647)
                              J. Paul Porter (#100723)
                              1418 Laurel Street, Suite A (29201)
                              Post Office Box 11675
                              Columbia, South Carolina 29211
                              Phone: 803-799-9530
                              Fax:    803-799-9533
                              Chance@cbphlaw.com
                              Paul@cbphlaw.com

                            *Attorneys for Plaintiff*

September 27, 2023

ELECTRONICALLY FILED - 2023 Sep 27 9:43 AM - SPARTANBURG - COMMON PLEAS - CASE#2023CP4203637

STATE OF SOUTH CAROLINA

COUNTY OF SPARTANBURG

Omega Honeywood,

          Plaintiff,

  vs.

Spartanburg Community College,

          Defendant.

IN THE COURT OF COMMON PLEAS
SEVENTH JUDICIAL CIRCUIT

**COMPLAINT**
**(Jury Trial Demanded)**

## EMPLOYMENT CASE

Plaintiff complaining of the Defendant herein would respectfully allege that:

### PARTIES AND JURISDICTION

1.    Plaintiff, Omega Honeywood (hereinafter "Plaintiff"), was formerly employed by Defendant Spartanburg Community College (hereinafter "Defendant").

2.    Defendant, is a second education institution that exists to educate students in various topics, trades, and profession.  Defendant is headquartered in Spartanburg County, South Carolina and operates within the

3.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, and the common law of South Carolina.

4.    The events giving rise to this action occurred in Spartanburg County, the parties have sufficient connection to Spartanburg County, and jurisdiction and venue are proper.

### FACTUAL ALLEGATIONS

5.    Plaintiff began her employment with Defendant in or around 2014 when she was hired as the Director of the TRIO Student Support Services program. Plaintiff remained employed until on or about September 1, 2020, when she was abruptly terminated.

ELECTRONICALLY FILED - 2023 Sep 27 9:43 AM - SPARTANBURG - COMMON PLEAS - CASE#2023CP4203637

6.      Plaintiff was employed as the Director (Key Personnel) of the TRIO Student Support Services program, which is a program through the federal Department of Education designed to identify and provide services for individuals from disadvantaged backgrounds.

7.      Plaintiff performed her job in a competent, if not more than competent, manner.

8.      Plaintiff's supervisor was Ron Jackson, Vice President of Student Affairs.

9.      Jackson sexually harassed, attempted to sexually assault, and ultimately retaliated against Plaintiff for Plaintiff's refusal to perform sexual acts for him.

10.      Beginning in approximately January of 2015 and continuing through the end of Plaintiff's employment, Jackson solicited Plaintiff for a romantic relationship and sexual acts.

11.      From 2015 to 2020, Jackson would come to Plaintiff's personal home, knock on her front door, and attempt to solicit her for romantic and/or sexual acts.  Plaintiff consistently turned him away.

12.      On several occasions, Jackson attempted to grope Plaintiff's chest or posterior.

13.      On several occasions, Jackson made sexually inappropriate gestures with his hands to Plaintiff, simulating various sexual acts.

14.      Jackson requested that Plaintiff give him oral sex on multiple occasions.

15.      Plaintiff repeatedly turned down Jackson's advances, told him that he was acting inappropriately, and asked him to stop.

16.      Jackson also regularly gave Plaintiff romantic cards, stating things such as "I knew you were the one."

17.      Jackson would leave gifts and cards for Plaintiff at her personal residence, such as a television.

18.      Jackson's gifts also included sexual toys or other sexually inappropriate objects.

ELECTRONICALLY FILED - 2023 Sep 27 9:43 AM - SPARTANBURG - COMMON PLEAS - CASE#2023CP4203637

19.    Jackson would also try to give cash to Plaintiff while requesting romantic favors.

20.    Jackson attempted to convey many of the gifts, cards, and cash were to Plaintiff while in Defendant's workplace.

21.    Plaintiff consistently turned down and returned any money or gifts attempted to be given to her by Jackson.

22.    Jackson used his authority as Plaintiff's supervisor to place Plaintiff in vulnerable or isolated situations at which time he would solicit Plaintiff for romantic or sexual favors.

23.    On multiple occasions, Plaintiff threatened to go to Defendant's Human Resources Office concerning Jackson's behavior.

24.    Jackson responded to Plaintiff's threats of reporting to Human Resources by telling Plaintiff that "they don't want you here anyway."

25.    In 2016 Plaintiff attempted to report Jackson's behavior to Defendant's Human Resources Office.

26.    When Plaintiff attempted to explain the sexual harassment she had experienced to Defendant's Human Resources Office, they instructed her that they could not deal with the complaint unless Plaintiff left the office and returned with Jackson accompanying her.

27.    In November of 2019, Jackson intentionally touched Plaintiff's breasts while at work.  Plaintiff immediately rejected Jackson's inappropriate touching.

28.    On November 19, 2019, Jackson sent a text message to Plaintiff that he had been "dreaming about her."

29.    On Novembre 20, 2019, following a disagreement concerning the TRIO grant operations, Jackson stated to Plaintiff that he was "the alpha male here and in your house."

30.    On November 21, 2019, Jackson mandated that Plaintiff come to his office for a

ELECTRONICALLY FILED - 2023 Sep 27 9:43 AM - SPARTANBURG - COMMON PLEAS - CASE#2023CP4203637

meeting.

31.     Jackson was visibly and audibly angry during the meeting.

32.     At one point, Jackson physically lunged at Plaintiff, attempting to grab her by the chest or neck.  Plaintiff avoided his physical attack and left immediately.

33.     The stress of this event exacerbated the symptoms of an autoimmune disorder that Plaintiff suffers from, causing her to go to the hospital for treatment later that day.

34.     Jackson was notified that Plaintiff required medical attention at the hospital.

35.     Upon being notified that Plaintiff was going to the hospital for medical treatment, Jackson quickly emailed Plaintiff with allegations that he was going to report Plaintiff to the Defendant's Human Resources Office for cursing at him.

36.     Jackson later emailed Defendant's Human Resources Office, alleging that Plaintiff had cursed at him.

37.     Plaintiff had not cursed at Jackson.

38.     Plaintiff was advised by Defendant's Human Resources personnel at this point to bring a witness for any otherwise one-on-one meetings with Jackson.

39.     On December 12, 2019, Plaintiff was again summoned to Jackson's office for a meeting.

40.     Pursuant to the advice of Defendant's Human Resources Office, Plaintiff brought with her a witness for the interaction.

41.     Jackosn became upset and angry at seeing that Plaintiff had brought a witness.

42.     Jackson began to physically push the witness out of his office.

43.     Jackson then again lunged at Plaintiff, attempting to grab her by her chest or neck.

44.     Plaintiff attempted to leave Jackson's office, but Jackson blocked the door.

ELECTRONICALLY FILED - 2023 Sep 27 9:43 AM - SPARTANBURG - COMMON PLEAS - CASE#2023CP4203637

45.     Jackson stated that Plaintiff had committed insubordination by bringing a witness to the meeting.

46.     Plaintiff immediately thereafter reported the December 12, 2019, incident to Defendant's Human Resources Office.

47.     The next day, Plaintiff met with Rick Teal, Defendant's Vice President of Human Resources, to inform him of Jackson's harassing and retaliatory behavior.

48.     Plaintiff also provided documentation of Jackson's harassing and retaliatory communications.

49.     From January through July of 2020, Jackson began to cut Plaintiff out of necessary communications for Plaintiff's job.  Jackson also undercut Plaintiff by overriding Plaintiff's decisions related to the TRIO program, creating additional issues for Plaintiff's job and the program.

50.     In August of 2020, Plaintiff again reported the regular sexual harassment, solicitation, assaults, and retaliation to a higher-level supervisor, the Senior Vice President Academic Affairs, Cheryl Cox.

51.     Cox told Plaintiff that she would inform Rick Teal, Vice President of Human Resources, about Plaintiff's Complaint.

52.     Plaintiff told Cox that she had already reported the behavior to Teal, who did not do anything to help.

53.     Plaintiff further stated that she feared Teal would report Plaintiff's complaint to Jackson again, and that Jackson would then retaliate against her for it.

54.     Teal later called Plaintiff, and expressed that he was upset that Plaintiff had gone outside of the Human Resources Department to seek help regarding Jackson's behavior.

ELECTRONICALLY FILED - 2023 Sep 27 9:43 AM - SPARTANBURG - COMMON PLEAS - CASE#2023CP4203637

55.    Teal stated that he informed Jackson of Plaintiff's complaint to Cox.

56.    A few days later, Jackson stated to Plaintiff that he was tired of Plaintiff reporting him to Human Resources and his supervisors.

57.    Jackson additionally threatened that he was going to go to the Human Resources Office to have Plaintiff's terminated if she continued to report his behavior to Human Resources and his supervisors.

58.    A few days after Jackson's threat to terminate Plaintiff for reporting his behavior to Human Resources and his supervisors, Jackson made false allegations of poor performance against Plaintiff.

59.    On August 31, 2020, Jackson demanded that Plaintiff meet with him in his office for a one-on-one meeting.

60.    Plaintiff contacted a member of Defendant's Human Resources Office, who instructed her not to go to the meeting alone.

61.    Plaintiff thereafter requested from Jackson via email permission to bring a witness to the meeting.

62.    Jackson denied the request.

63.    Plaintiff then requested that the meeting be conducted via remote video or telephonic means.

64.    Jackson denied this second request.

65.    Plaintiff did not attend the meeting out of fear for her personal safety.

66.    The next day, September 1, 2020, Plaintiff was called for a meeting in the Human Resources Office, where Plaintiff's employment was terminated.

67.    At Plaintiff's termination meeting, Jackson, Teal, and another Human Resources

ELECTRONICALLY FILED - 2023 Sep 27 9:43 AM - SPARTANBURG - COMMON PLEAS - CASE#2023CP4203637

employee.

68.     Jackson and Teal stated that Defendant had originally intended to call her in to issue a warning, but had now decided to terminate her employment.

69.     Plaintiff later discovered through the Equal Employment Opportunity Commission investigation that a warning had been drafted for Plaintiff allegedly going outside her chain of command by reporting Jackson's inappropriate behavior to Cox.

70.     Defendant issued a termination letter to Plaintiff stating that she was terminated for "misconduct."

71.     Defendant provided statements to the South Carolina Department of Employment and Works that alleged Plaintiff was terminated for failing to show up to a meeting.

72.     Defendant later provided statements to the Equal Employment Opportunity Commission that Plaintiff was terminated for performance issues within the grant office that Plaintiff oversaw.

73.     Despite Plaintiff's multiple reports over the years, neither Defendant's Human Resources Office nor Defendant's high-level management took action to curtail Jackson's sexually inappropriate or retaliatory behavior towards Plaintiff.

**FOR A FIRST CAUSE OF ACTION**
(Gender Discrimination in Violation of Title VII)

74.     Plaintiff realleges the foregoing where consistent.

75.     Plaintiff, a female, is a member of a sex-based protected class.

76.     Plaintiff was subjected to unwelcome sexual harassment and assault based on her sex from her supervisor, Defendant employee Ron Jackson during her employment with Defendant.

77.     Such harassment affected tangible aspects of the employee's compensation,

terms, conditions, and privileges of employment.

78.     Defendant knew or should have known of the harassment and took no effective remedial action.

79.     Such unwanted sexual conduct created an intimidating and hostile work environment and was subjectively viewed by Plaintiff to be abusive.

80.     The conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere.

81.     Moreover, Defendant treated Plaintiff disparately with respect to the terms and conditions of her employment in comparison to similarly situated male employees.

82.     The sexual harassment, sexually hostile work environment, and disparate treatment described above amounts to unlawful gender discrimination prohibited by Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, and amendments thereto, and is the proximate cause of Plaintiff's termination.

83.     Defendant is strictly liable for the sexual harassment of it's supervisory employee.

84.     As a direct and proximate result of the Defendant' actions, Plaintiff has suffered, and Defendant are liable to Plaintiff for back pay, front pay, loss of benefits, prospective benefits, pain and suffering, emotional distress, humiliation, embarrassment, mental anguish, mental suffering, and reputational harm; as well as the reasonable attorney's fees and costs associated with this action. Plaintiff also seeks pre-judgement interest on all damages sought.

85.     Plaintiff is also entitled to an award of punitive damages for the willful intentional acts of the Defendant through their agents and employees, as determined by a jury.

**FOR A SECOND CAUSE OF ACTION**
(Title VII Retaliation)

86.     Plaintiff realleges the foregoing where consistent.

ELECTRONICALLY FILED - 2023 Sep 27 9:43 AM - SPARTANBURG - COMMON PLEAS - CASE#2023CP4203637

87. Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

88. Plaintiff engaged in a protected activity by making complaints to Defendant's Human Resources Office and Assistant Dean regarding Jackson's sexually inappropriate behavior, harassment, assault, and retaliation.

89. As a result of Plaintiff's complaints, Defendant's agents/employees refused to investigate or take action regarding Plaintiff's complaints, excluded her from meetings, undermined and negatively altered her work product, created false allegations against her, and subsequently terminated her.

90. Defendant is liable to Plaintiff for their willful and wrongful retaliation against Plaintiff for the protected action she took against unfair, egregious, and justifiably perceived sexual harassment, assault, and retaliation.

91. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered, and Defendant is liable to Plaintiff for back pay, front pay, loss of benefits, prospective benefits, pain and suffering, emotional distress, humiliation, embarrassment, mental anguish, mental suffering, and reputational harm; as well as the reasonable attorney's fees and costs associated with this action. Plaintiff also seeks pre-judgement interest on all damages sought.

92. Plaintiff is also entitled to an award of punitive damages for the willful intentional acts of the Defendant through their agents and employees, as determined by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant for an award of actual and compensatory damages in amounts to be determined by a jury, as well as reasonable

ELECTRONICALLY FILED - 2023 Sep 27 9:43 AM - SPARTANBURG - COMMON PLEAS - CASE#2023CP4203637

attorney's fees, costs of this action, and any such other relief as this Court deems just and proper. Plaintiff further requests an award of punitive damages from Defendant for the willful and wanton conduct alleged herein, to the full extent of when such damages are allowed under the causes of actions as plead above. Plaintiff also requests pre-judgement interest on all damages.

**CROMER BABB PORTER & HICKS, LLC**

BY:    s/ Chance Sturup_____
          Chance Sturup (#105647)
          J. Paul Porter (#100723)
          1418 Laurel Street, Suite A (29201)
          Post Office Box 11675
          Columbia, South Carolina 29211
          Phone: 803-799-9530
          Fax:    803-799-9533
          Chance@cbphlaw.com
          Paul@cbphlaw.com

          ***Attorneys for Plaintiff***

September 27, 2023

ELECTRONICALLY FILED - 2023 Sep 27 9:43 AM - SPARTANBURG - COMMON PLEAS - CASE#2023CP4203637