IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Omega Honeywood,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Spartanburg Community College,<br><br>　　　　　Defendant. | C/A. No.: 7:23-cv-05749-DCC-MGB<br><br>**AMENDED COMPLAINT**<br>**(Jury Trial Demanded)** |

**EMPLOYMENT CASE**

Plaintiff complaining of the Defendant herein would respectfully allege that:

**PARTIES AND JURISDICTION**

1. Plaintiff, Omega Honeywood (hereinafter "Plaintiff"), was formerly employed by Defendant Spartanburg Community College (hereinafter "Defendant").

2. Defendant, is a second education institution that exists to educate students in various topics, trades, and profession. Defendant is headquartered in Spartanburg County, South Carolina and operates within the

3. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, and the common law of South Carolina.

4. The events giving rise to this action occurred in Spartanburg County, the parties have sufficient connection to Spartanburg County, and jurisdiction and venue are proper.

**FACTUAL ALLEGATIONS**

5. Plaintiff began her employment with Defendant in or around 2014 when she was hired as the Director of the TRIO Student Support Services program. Plaintiff remained employed until on or about September 1, 2020, when she was abruptly terminated.

6. Plaintiff was employed as the Director (Key Personnel) of the TRIO Student Support Services program, which is a program through the federal Department of Education designed to identify and provide services for individuals from disadvantaged backgrounds.

7. Plaintiff performed her job in a competent, if not more than competent, manner.

8. Plaintiff's supervisor was Ron Jackson, Vice President of Student Affairs.

9. Jackson sexually harassed, attempted to sexually assault, and ultimately retaliated against Plaintiff for Plaintiff's refusal to perform sexual acts for him.

10. Beginning in approximately January of 2015 and continuing through the end of Plaintiff's employment, Jackson solicited Plaintiff for a romantic relationship and sexual acts.

11. From 2015 to 2020, Jackson would come to Plaintiff's personal home, knock on her front door, and attempt to solicit her for romantic and/or sexual acts. Plaintiff consistently turned him away.

12. On several occasions, Jackson attempted to grope Plaintiff's chest or posterior.

13. On several occasions, Jackson made sexually inappropriate gestures with his hands to Plaintiff, simulating various sexual acts.

14. Jackson requested that Plaintiff give him oral sex on multiple occasions.

15. Plaintiff repeatedly turned down Jackson's advances, told him that he was acting inappropriately, and asked him to stop.

16. Jackson also regularly gave Plaintiff romantic cards, stating things such as "I knew you were the one."

17. Jackson would leave gifts and cards for Plaintiff at her personal residence, such as a television.

18. Jackson's gifts also included sexual toys or other sexually inappropriate objects.

19. Jackson would also try to give cash to Plaintiff while requesting romantic favors.

20. Jackson attempted to convey many of the gifts, cards, and cash were to Plaintiff while in Defendant's workplace.

21. Plaintiff consistently turned down and returned any money or gifts attempted to be given to her by Jackson.

22. Jackson used his authority as Plaintiff's supervisor to place Plaintiff in vulnerable or isolated situations at which time he would solicit Plaintiff for romantic or sexual favors.

23. On multiple occasions, Plaintiff threatened to go to Defendant's Human Resources Office concerning Jackson's behavior.

24. Jackson responded to Plaintiff's threats of reporting to Human Resources by telling Plaintiff that "they don't want you here anyway."

25. In 2016 Plaintiff attempted to report Jackson's behavior to Defendant's Human Resources Office.

26. When Plaintiff attempted to explain the sexual harassment she had experienced to Defendant's Human Resources Office, they instructed her that they could not deal with the complaint unless Plaintiff left the office and returned with Jackson accompanying her.

27. In November of 2019, Jackson intentionally touched Plaintiff's breasts while at work. Plaintiff immediately rejected Jackson's inappropriate touching.

28. On November 19, 2019, Jackson sent a text message to Plaintiff that he had been "dreaming about her."

29. On Novembre 20, 2019, following a disagreement concerning the TRIO grant operations, Jackson stated to Plaintiff that he was "the alpha male here and in your house."

30. On November 21, 2019, Jackson mandated that Plaintiff come to his office for a

meeting.

31. Jackson was visibly and audibly angry during the meeting.

32. At one point, Jackson physically lunged at Plaintiff, attempting to grab her by the chest or neck. Plaintiff avoided his physical attack and left immediately.

33. The stress of this event exacerbated the symptoms of an autoimmune disorder that Plaintiff suffers from, causing her to go to the hospital for treatment later that day.

34. Jackson was notified that Plaintiff required medical attention at the hospital.

35. Upon being notified that Plaintiff was going to the hospital for medical treatment, Jackson quickly emailed Plaintiff with allegations that he was going to report Plaintiff to the Defendant's Human Resources Office for cursing at him.

36. Jackson later emailed Defendant's Human Resources Office, alleging that Plaintiff had cursed at him.

37. Plaintiff had not cursed at Jackson.

38. Plaintiff was advised by Defendant's Human Resources personnel at this point to bring a witness for any otherwise one-on-one meetings with Jackson.

39. On December 12, 2019, Plaintiff was again summoned to Jackson's office for a meeting.

40. Pursuant to the advice of Defendant's Human Resources Office, Plaintiff brought with her a witness for the interaction.

41. Jackosn became upset and angry at seeing that Plaintiff had brought a witness.

42. Jackson began to physically push the witness out of his office.

43. Jackson then again lunged at Plaintiff, attempting to grab her by her chest or neck.

44. Plaintiff attempted to leave Jackson's office, but Jackson blocked the door.

45. Jackson stated that Plaintiff had committed insubordination by bringing a witness to the meeting.

46. Plaintiff immediately thereafter reported the December 12, 2019, incident to Defendant's Human Resources Office.

47. The next day, Plaintiff met with Rick Teal, Defendant's Vice President of Human Resources, to inform him of Jackson's harassing and retaliatory behavior.

48. Plaintiff also provided documentation of Jackson's harassing and retaliatory communications.

49. From January through July of 2020, Jackson began to cut Plaintiff out of necessary communications for Plaintiff's job. Jackson also undercut Plaintiff by overriding Plaintiff's decisions related to the TRIO program, creating additional issues for Plaintiff's job and the program.

50. In August of 2020, Plaintiff again reported the regular sexual harassment, solicitation, assaults, and retaliation to a higher-level supervisor, the Senior Vice President Academic Affairs, Cheryl Cox.

51. Cox told Plaintiff that she would inform Rick Teal, Vice President of Human Resources, about Plaintiff's Complaint.

52. Plaintiff told Cox that she had already reported the behavior to Teal, who did not do anything to help.

53. Plaintiff further stated that she feared Teal would report Plaintiff's complaint to Jackson again, and that Jackson would then retaliate against her for it.

54. Teal later called Plaintiff, and expressed that he was upset that Plaintiff had gone outside of the Human Resources Department to seek help regarding Jackson's behavior.

55. Teal stated that he informed Jackson of Plaintiff's complaint to Cox.

56. A few days later, Jackson stated to Plaintiff that he was tired of Plaintiff reporting him to Human Resources and his supervisors.

57. Jackson additionally threatened that he was going to go to the Human Resources Office to have Plaintiff's terminated if she continued to report his behavior to Human Resources and his supervisors.

58. A few days after Jackson's threat to terminate Plaintiff for reporting his behavior to Human Resources and his supervisors, Jackson made false allegations of poor performance against Plaintiff.

59. On August 31, 2020, Jackson demanded that Plaintiff meet with him in his office for a one-on-one meeting.

60. Plaintiff contacted a member of Defendant's Human Resources Office, who instructed her not to go to the meeting alone.

61. Plaintiff thereafter requested from Jackson via email permission to bring a witness to the meeting.

62. Jackson denied the request.

63. Plaintiff then requested that the meeting be conducted via remote video or telephonic means.

64. Jackson denied this second request.

65. Plaintiff did not attend the meeting out of fear for her personal safety.

66. The next day, September 1, 2020, Plaintiff was called for a meeting in the Human Resources Office, where Plaintiff's employment was terminated.

67. At Plaintiff's termination meeting, Jackson, Teal, and another Human Resources

employee.

68.     Jackson and Teal stated that Defendant had originally intended to call her in to issue a warning, but had now decided to terminate her employment.

69.     Plaintiff later discovered through the Equal Employment Opportunity Commission investigation that a warning had been drafted for Plaintiff allegedly going outside her chain of command by reporting Jackson's inappropriate behavior to Cox.

70.     Defendant issued a termination letter to Plaintiff stating that she was terminated for "misconduct."

71.     Defendant provided statements to the South Carolina Department of Employment and Works that alleged Plaintiff was terminated for failing to show up to a meeting.

72.     Defendant later provided statements to the Equal Employment Opportunity Commission that Plaintiff was terminated for performance issues within the grant office that Plaintiff oversaw.

73.     Despite Plaintiff's multiple reports over the years, neither Defendant's Human Resources Office nor Defendant's high-level management took action to curtail Jackson's sexually inappropriate or retaliatory behavior towards Plaintiff.

**FOR A FIRST CAUSE OF ACTION**
(Title VII Gender Discrimination – Hostile Work Environment)

74.     Plaintiff realleges the foregoing where consistent.

75.     Plaintiff, a female, is a member of a sex-based protected class.

76.     Plaintiff was subjected to unwelcome sexual harassment and assault based on her sex from her supervisor, Defendant employee Ron Jackson during her employment with Defendant.

77.     Such harassment was sufficiently severe or pervasive enough to alter tangible

aspects of the employee's compensation, terms, conditions, and other conditions of employment.

78. Defendant knew or should have known of the harassment and took no effective remedial action.

79. Such unwanted sexual conduct created an intimidating and hostile work environment and was subjectively viewed by Plaintiff to be abusive.

80. An objectively reasonable person in Plaintiff's position would have also viewed the working environment as hostile or abusive.

81. The conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere.

82. The hostile work environment created by Defendant's employee, who was Plaintiff's supervisor, is imputable to Defendant.

83. The sexually hostile work environment described above amounts to unlawful gender discrimination prohibited by Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, and amendments thereto, and is the proximate cause of Plaintiff's termination.

84. Defendant is strictly liable for the Quid Pro Quo sexual harassment scheme of its supervisory and management employee, Ron Jackson.

85. As a direct and proximate result of the Defendant' actions, Plaintiff has suffered, and Defendant are liable to Plaintiff for back pay, front pay, loss of benefits, prospective benefits, pain and suffering, emotional distress, humiliation, embarrassment, mental anguish, mental suffering, and reputational harm; as well as the reasonable attorney's fees and costs associated with this action. Plaintiff also seeks pre-judgement interest on all damages sought.

86. Plaintiff is also entitled to an award of punitive damages for the willful intentional acts of the Defendant through their agents and employees, as determined by a jury.

## FOR A SECOND CAUSE OF ACTION
(Title VII Gender Discrimination – Disparate Treatment)

87.     Plaintiff realleges the foregoing where consistent.

88.     Plaintiff, a female, is a member of a sex-based protected class.

89.     Plaintiff was treated worse in regard to the material aspects of her employment as compared to similarly situated male employees who engaged in similar or worse behavior than Plaintiff.

90.     In particular, amongst other occurrences of disparate treatment, Defendant gave greater credence to the word of similarly situated male employees, without justification, as compared to Plaintiff, as it related to Plaintiff's complaints of sexual harassment in the workplace.

91.     Such difference in treatment received by Plaintiff as compared to her male counterparts was on the basis of her sex, female, and has no other justification worthy of credence.

92.     Such differential treatment in favor of male employees ultimately resulted in Defendant terminating Plaintiff from employment.

93.     The disparate treatment described above amounts to unlawful gender discrimination prohibited by Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, and amendments thereto, and is the proximate cause of Plaintiff's termination.

94.     As a direct and proximate result of the Defendant' actions, Plaintiff has suffered, and Defendant are liable to Plaintiff for back pay, front pay, loss of benefits, prospective benefits, pain and suffering, emotional distress, humiliation, embarrassment, mental anguish, mental suffering, and reputational harm; as well as the reasonable attorney's fees and costs associated with this action. Plaintiff also seeks pre-judgement interest on all damages sought.

95. Plaintiff is also entitled to an award of punitive damages for the willful intentional acts of the Defendant through their agents and employees, as determined by a jury.

## FOR A THIRD CAUSE OF ACTION
(Title VII Gender Discrimination – Quid Pro Quo)

96. Plaintiff realleges the foregoing where consistent.

97. Plaintiff, a female, is a member of a sex-based protected class.

98. Plaintiff was subjected to unwelcome sexual harassment and assault based on her sex from her supervisor, Defendant employee Ron Jackson during her employment with Defendant.

99. Such sexual harassment from Defendant employee Ron Jackson included requests that Plaintiff perform sexual acts upon or with Jackson, or that Plaintiff otherwise engage in a romantic relationship with Jackson.

100. Defendant employee Ron Jackson threatened to negatively affect Plaintiff's employment status, including reporting Plaintiff to human resources or causing Plaintiff to be terminated, should Plaintiff reject Jackson's requests that Plaintiff perform sexual acts upon or with Jackson, or to otherwise engage in a romantic relationship with Jackson, or should Plaintiff report Jackson's behavior to Defendant's supervisory and/or human resources personnel.

101. Plaintiff repeatedly rejected Defendant employee Ron Jackson's sexual harassment and refused to engage in any sexual acts with him or to engage in a romantic relationship with him. Plaintiff further repeatedly reported Jackon's sexual harassment to Defendant's supervisory and human resources personnel, which Jackson was made aware of.

102. Jackson, as a result of Plaintiff's reaction to Jackson's sexual harassment, harassed Plaintiff in her employment, subjected her to unwarranted and excessive scrutiny, subjected her to unwarranted and excessive discipline, subjected her to a hostile working

environment, and ultimately caused her to be terminated from her employment with justification.

103. Defendant knew or should have known of Jackson's Quid Pro Quo sexual harassment scheme yet took no effective remedial action to prevent it.

104. The Quid Pro Quo sexual harassment described above amounts to unlawful gender discrimination prohibited by Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, and amendments thereto, and is the proximate cause of Plaintiff's termination.

105. Defendant is strictly liable for the Quid Pro Quo sexual harassment scheme of its supervisory and management employee, Ron Jackson.

106. As a direct and proximate result of the Defendant' actions, Plaintiff has suffered, and Defendant are liable to Plaintiff for back pay, front pay, loss of benefits, prospective benefits, pain and suffering, emotional distress, humiliation, embarrassment, mental anguish, mental suffering, and reputational harm; as well as the reasonable attorney's fees and costs associated with this action. Plaintiff also seeks pre-judgement interest on all damages sought.

107. Plaintiff is also entitled to an award of punitive damages for the willful intentional acts of the Defendant through their agents and employees, as determined by a jury.

**FOR A FOURTH CAUSE OF ACTION**
(Title VII Retaliation)

108. Plaintiff realleges the foregoing where consistent.

109. Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

110. Plaintiff engaged in a protected activity by making complaints to Defendant's Human Resources Office and Assistant Dean regarding Jackson's sexually inappropriate behavior, harassment, assault, and retaliation.

111. As a result of Plaintiff's complaints, Defendant's agents/employees refused to investigate or take action regarding Plaintiff's complaints, excluded her from meetings, undermined and negatively altered her work product, created false allegations against her, and subsequently terminated her.

112. Defendant is liable to Plaintiff for their willful and wrongful retaliation against Plaintiff for the protected action she took against unfair, egregious, and justifiably perceived sexual harassment, assault, and retaliation.

113. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered, and Defendant is liable to Plaintiff for back pay, front pay, loss of benefits, prospective benefits, pain and suffering, emotional distress, humiliation, embarrassment, mental anguish, mental suffering, and reputational harm; as well as the reasonable attorney's fees and costs associated with this action. Plaintiff also seeks pre-judgement interest on all damages sought.

114. Plaintiff is also entitled to an award of punitive damages for the willful intentional acts of the Defendant through their agents and employees, as determined by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant for an award of actual and compensatory damages in amounts to be determined by a jury, as well as reasonable attorney's fees, costs of this action, and any such other relief as this Court deems just and proper. Plaintiff further requests an award of punitive damages from Defendant for the willful and wanton conduct alleged herein, to the full extent of when such damages are allowed under the causes of actions as plead above. Plaintiff also requests pre-judgement interest on all damages.

**(Signature Block to Follow)**

**CROMER BABB PORTER & HICKS, LLC**

BY: <u>*s/ Chance Sturup*</u>
Chance Sturup (#13815)
J. Paul Porter (#11504)
1418 Laurel Street, Suite A (29201)
Post Office Box 11675
Columbia, South Carolina 29211
Phone: 803-799-9530
Fax:    803-799-9533
Chance@cbphlaw.com
Paul@cbphlaw.com

*Attorneys for Plaintiff*

November 17, 2023